UNITED STATES DISTRICT COURT      O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| EDUARDO SANCHEZ-BELTRAN | § | |
| | § | |
|     Plaintiff | § | CIVIL ACTION NO. L-09-11 |
| VS. | § | CRIMINAL ACTION NO. L-07-932-1 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Eduardo Sanchez-Beltran's ("Sanchez-Beltran") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. [Dkt. No. 1].[1] The Court has carefully reviewed all pertinent matters in this case. For the reasons stated below, all of Sanchez-Beltran's claims are **DISMISSED with prejudice**.

**I.    JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255 (2006). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214 (1996) governs § 2255 motions. Before AEDPA, criminal defendants could file motions attacking their conviction and sentence under 28 U.S.C. § 2255 at any time. After the AEDPA, however, movants under § 2255 are subject to a one-year statute of limitations period. *See* 28 U.S.C. § 2255(f)(1). In this case, Sanchez-Beltran's motion is timely because it was filed within one year of the date on which his judgment of conviction became final.[2]

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:09-cv-11. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:07-cr-932-1.

[2] Sanchez-Beltran filed his motion to vacate on January 20, 2009, a date which falls within the one-year statute of limitations period that began to run ten days after judgment was entered on February 19, 2008. *See* FED. R. APP. P. 4(b)(1) (setting ten-day period for filing notice of appeal after entry of judgment; *United States v. Gamble*, 208 F.3d

## II.  BACKGROUND

### A.  The Underlying Conviction

On July 3, 2007, a federal grand jury in Laredo, Texas indicted Sanchez-Beltran in criminal case number L-07-cr-932-1 of (1) conspiracy to possess and distribute in excess of five (5) kilograms of cocaine in violation of Title 21, United States Code, Sections 846, 414(a)(1), and 841(b)(1)(A); and  (2) possession with intent to distribute in excess of five (5) kilograms of cocaine in violation of Title 21, United Sates Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code, Section 2; and (3) importation into the United States from the Republic of Mexico in excess of five (5) kilograms of cocaine in violation of Title 21, United States Code, Sections 952(a), 960(b)(1)(B), and Title 18 United States Code, Section 2.  [Cr. Dkt. No. 8].  Sanchez-Beltran decided to forgo trial and entered a plea of guilty to Count Two on August 7, 2007.  [Minute Entry of 8/7/07].  Pursuant to a written plea agreement, Sanchez-Beltran signed a waiver of appeal.  [Cr. Dkt. No. 16].  Sanchez-Beltran's plea agreement included the following language:

> 10.  In exchange for the concessions made by the Government in this agreement, the Defendant expressly waives the right to contest and/or appeal, **either directly or collaterally**, his guilty plea, conviction, sentence, and/or detention by means of **ANY** post-conviction proceeding whatsoever.  **Such waiver expressly includes, and Defendant expressly agrees not to file, ANY DIRECT and/or COLLATERAL attacks on Defendant's guilty plea, conviction, sentence, and/or detention pursuant to any statute, law, procedure, or Constitutional provision whatsoever, including, without limitation, Title 18, U.S.C., § 3742 and Title 28, U.S.C. § 2255**.
>
> In waiving those rights, Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  Understanding this, Defendant agrees to waive the right to "collaterally attack" his conviction and/or sentence in any manner whatsoever, including Title 28, U.S.C. § 2255.  Defendant is also aware that Title 18, U.S.C. § 3742 affords a Defendant the right to appeal the

---

536, 536-37 (5th Cir. 2000) (per curiam) (holding that judgment becomes final when applicable period for seeking review of a final conviction has expired).

> sentence imposed and/or the manner in which such sentence was determined. Understanding this, Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds whatsoever, including, without limitation, those set forth in Title 18 U.S.C. § 3742.**

[Dkt. No. 16 at ¶ 10]. Sanchez-Beltran and his defense counsel signed the plea agreement. [*Id*. at 7]. At a re-arraignment hearing before Magistrate Judge Adriana Arce-Flores on August 7, 2007, Sanchez-Beltran affirmed that he reviewed his plea agreement with his attorney. [Digital Recording of August 7, 2007 Re-arraignment ("R.Rec.") at 11:20 a.m.]. Sanchez-Beltran also confirmed that he signed his plea agreement. [*Id*.]. Thereafter, Judge Arce-Flores asked Sanchez-Beltran whether he understood that he had given up his to right to appeal in exchange for a reduction in the guideline range. [*Id*. at 11:21 a.m.]. Sanchez-Beltran replied affirmatively. Judge Arce-Flores then admonished Sanchez-Beltran as to his right pursuant to Federal Rule of Criminal Procedure 11. [*Id*. at 11:21-11:22 a.m.]. In response, Sanchez-Beltran indicated that he understood his rights as they were explained to him. [*Id*. at 11:22 a.m.]. After the government recited the factual basis for Sanchez-Beltran's plea, [*Id*. at 11:28 a.m.], Sanchez-Beltran pled guilty. [*Id*. at 11:30 a.m.]. Judge Arce-Flores subsequently accepted Sanchez-Beltran's plea. [*Id*. at 11:31 a.m.].

On January 31, 2008, Sanchez-Beltran appeared before Judge Tom Stagg ("Judge Stagg") for sentencing. [Minute Entry of 1/31/2008]. Judge Stagg sentenced Sanchez-Beltran to 78 months imprisonment, a five-year term of supervised release, and a $100 special assessment fee. [*Id*.]. Judgment was entered on February 19, 2008.[3] [Cr. Dkt. No. 27]. Sanchez-Beltran did not pursue a direct appeal.

---

[3] On January 31, 2008, Sanchez-Beltran's criminal case was reassigned to Judge Stagg. After Sanchez-Beltran's sentencing and the entry of judgment, his criminal case was reassigned to this Court on February 19, 2008.

### B. The Current Petition

On January 20, 2009, Sanchez-Beltran filed the pending motion challenging his conviction and sentence. [Dkt. No. 1]. In his motion, Sanchez-Beltran contends that he received ineffective assistance of counsel because his counsel "failed to perfect an appeal" on his behalf and also "failed to seek additionally departures." [*Id*. at 5]. Sanchez-Beltran also alleges violations of his equal protection and due process rights because, as a national of Mexico, "[he] is disqualified from BOP programs like halfway house early release or drug programs which could reduce his sentence up to 12 months" and is also not eligible for "all the benefits" afforded to other inmates. [*Id*. at 6].

## III. DISCUSSION

### A. Standard Governing Claims under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). After conducting an initial examination of the petition, the Court must dismiss if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2255, PROC. R. 4(b).

**B.     Waiver of Right to Appeal and Collateral Attack**

Sanchez-Beltran has alleged ineffective assistance of counsel, a wrong of constitutional proportion, which is proper in a motion under 28 U.S.C. § 2255.  The Court must first determine, however, whether Sanchez-Beltran's claim is foreclosed by the waiver of his right to collaterally attack his conviction and sentence.     A defendant may waive the right to appeal and collaterally attack a conviction and sentence, so long as the waiver is both knowing and voluntary.  *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contract interpretation when construing plea agreements."); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997).  A district court must determine whether the waiver was knowing and voluntary, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544.  A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack his conviction or sentence.  *See United States v. Boyd*, No. 3:06-cv-1365-H, 2007 WL 900949, at *3 (N.D. Tex. Mar. 23, 2007); *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) ("We think that a defendant's waiver of her right to appeal deserves and, indeed, requires that special attention of the district court.").  In limited circumstances, a defendant may plea around a waiver and claim ineffective assistance of counsel if he alleges that the waiver itself was tainted by counsel's ineffective assistance.  *White*, 307 F.3d at 339-43.

In this case, a careful review of the record reveals no evidence that Sanchez-Beltran's waiver of his right to collaterally attack his sentence under § 2255 was unknowing or involuntary.  As an initial matter, Sanchez-Beltran signed his plea agreement and thus

acknowledged that he reviewed it with his counsel and understood its terms, including the provisions in paragraph ten that he would not file any collateral attacks on his sentence, that he was aware of his waiver of rights, including the right to collaterally attack a sentence after it became final, and that he agreed to waive his right to collaterally attack his sentence. [Cr. Dkt. No. 16]. Further, during his re-arraignment hearing, Sanchez-Beltran affirmed that he reviewed his plea agreement with his attorney and also signed it. [R. Rec. at 11:20 a.m.]. Sanchez-Beltran also represented that he understood that, under the terms of the plea agreement, he had given up his right to appeal in exchange for a reduction in his guideline range. [*Id*. at 11:21 a.m.].

Importantly, Sanchez-Beltran has made no allegation in his motion that his waiver was unknowing or involuntary, nor does the record establish as much. When a petitioner does not allege, and the record contains no indication that ratification of the plea agreement was involuntary or unknowing, the Court will hold the defendant to the bargain that he made—the Court need not presume that the waiver was ineffective. *See White*, 307 F.3d at 343; *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746); *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994) (stating that a plea agreement will be upheld where the record clearly demonstrates defendant read and understood agreement and he raised no questions regarding any waiver-of-appeal issue). Therefore, based upon the plain waiver language of Sanchez-Beltran's plea agreement, the Court concludes that Sanchez-Beltran knowingly and voluntarily waived his right to appeal and to collaterally attack his sentence and conviction. *See Bond*, 414 F.3d at 544; *see also United States v. Wilkes*, 20 F.3d 651, 653-54 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). Accordingly, the Court must determine whether, and to what extent, Sanchez-Beltran's waiver of his right to collaterally attack his sentence applies to his claim of ineffective assistance of counsel.

### C.     Standard Governing Ineffective Assistance of Counsel

In order to merit post-conviction relief due to ineffective assistance of counsel, Sanchez-Beltran must demonstrate that (1) counsel's performance was deficient and (2) that he suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994) (summarizing the *Strickland* standard of review).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See Strickland*, 466 U.S. at 687; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (finding that "[f]ailure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim . . . .").  Thus, a court does not have to analyze both components of a claim of ineffective assistance of counsel if the movant has made an insufficient showing as to one prong.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

Under the "performance" prong, counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-91.  In assessing whether counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ."  *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  A court is not to analyze counsel's actions in hindsight but rather to judge his or her decisions in a "highly deferential" manner.  *Motley*, 18 F.3d at 1226 (citing *Strickland*, 466 U.S. at 689).

Under the "prejudice" requirement, Sanchez-Beltran must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  "However, the mere possibility of a different outcome is not sufficient to prevail

on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane v. Johnson*, 178 F.3d 309, 312-13 (5th Cir. 1999) (citing *Ransom v. Johnson,* 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997)).

### 1. Request for a downward departure

Sanchez-Beltran claims that he received ineffective assistance of counsel because his attorney "failed to seek additional departures." [Dkt. No. 1 at 5]. Since Sanchez-Beltran does not claim that counsel's performance affected the validity of his waiver or the plea itself, the Court finds that Sanchez-Beltran's waiver of his right to collaterally attack his sentence extends to this claim. Nonetheless, it is apparent that the claim is without merit. Indeed, Sanchez-Beltran alleges no facts supporting his claim that additional departures were warranted and does not inform the Court as to what evidence he otherwise seeks to submit. Vague, conclusory, and attenuated allegations on their own cannot articulate a claim under 28 U.S.C. § 2255. *See United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999). Consequently, to the extent Sanchez-Beltran asserts he received ineffective assistance of counsel for his attorney's failure to seek additional departures, he has utterly failed to show that his attorney's performance was deficient or that he suffered prejudice. Moreover, the Court notes that Sanchez-Beltran's claim essentially represents an attack on the Court's application of the Sentencing Guidelines. But a motion under 28 U.S.C. § 2255 is not the proper vehicle to challenge a lawful but unfortuitous application of the Sentencing Guidelines to a defendant's sentence. *See Vaughn*, 955 F.2d at 368 (noting that § 2255 relief can only address a "narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice"). Sanchez-Beltran is simply complaining of the Court's application of the guidelines. Such claims are not cognizable

in § 2255 motions. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Accordingly, Sanchez-Beltran has failed to demonstrate that he received ineffective assistance of counsel due to his counsel's alleged failures to seek additional departures.

### 2. Failure to file notice of appeal

Sanchez-Beltran also claims that he received ineffective assistance of counsel because his attorney "failed to perfect an appeal on [Sanchez-Beltran's] behalf[.]" [Dkt. No. 1 at 5]. More specifically, Sanchez-Beltran avers that "[he] was told by [a]ttorney, Arturo Villarreal III (sic) that if [he] were to appeal [he] would face a harsher sentence therefore [his] right to appeal was waived." [*Id*.]. To prevail on a claim of ineffective assistance of counsel for failure to file a notice of appeal, a petitioner must demonstrate that counsel's failure to file a notice fell below an objective standard of reasonableness and that it prejudiced him. *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney's failure to file a notice of appeal requested by a defendant is *per se* ineffective assistance of counsel, even without a showing that the appeal would have had merit. *Id.* at 477. For the same reason, a defendant who explicitly tells his attorney not to file an appeal cannot later complain that his counsel performed deficiently in failing to file a notice of appeal. *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Where defense counsel has failed to consult with the defendant about an appeal, courts must inquire whether counsel was required to consult with his client. *See Flores-Ortega*, 528 U.S. at 479-80 (rejecting the bright-line rule that counsel must always file a notice of appeal or consult with the defendant regarding an appeal). This question goes to whether an attorney acted reasonably. An attorney has "consulted" with his client when he has advised him "about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover

defendant's wishes." *Id*. at 477. If counsel "consulted" with his client, then the attorney has acted unreasonably only by "failing to follow the defendant's express instructions with respect to an appeal." *Id.* But if the attorney did not consult with the defendant, then the Court has to determine whether the attorney's failure to consult itself constitutes deficient performance. *Id.* at 480.

Counsel deficiently performs when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. In determining whether counsel has a duty to consult with a defendant about an appeal, a court must consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*. But "[i]n cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*. Finally—in accordance with *Strictland*—even if a defendant is able to show that his counsel was deficient in his failure to consult with him about an appeal, he must nonetheless show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

Here, Sanchez-Beltran contends that his counsel was deficient, in part, because he "failed to perfect an appeal on [Sanchez-Beltran's] behalf[.]" [Dkt. No. 1 at 10]. As an initial matter, the Court notes that Sanchez-Beltran does not allege that he requested an appeal; indeed, Sanchez-Beltran has failed to allege any facts showing that he requested an appeal or that his

counsel failed to consult with him about an appeal. But even assuming that counsel failed to consult with Sanchez-Beltran about an appeal, the record is sufficient to reflect that, under the circumstances of this case, a rational defendant would not want to appeal. Importantly, because Sanchez-Beltran's conviction followed a plea bargain and waiver of appeal, the scope of appealable issues available to Sanchez-Beltran was limited. It is also clear that Sanchez-Beltran received the benefit for which he bargained. As noted, based in part on his acceptance of responsibility and waiver of his right to appeal and collateral attack, Sanchez-Beltran's base offense level was lowered from 34 to 28.[4]

Additionally, the record does not reflect that Sanchez-Beltran reasonably demonstrated to his counsel that he was interested in appealing his sentence. As noted, Sanchez-Beltran explicitly waived his right to appeal in his plea agreement. [Dkt. No. 24]. During his re-arraignment hearing, Sanchez-Beltran represented that he read and signed his plea agreement, [R. Rec. at 11:20 a.m.], and also that he understood that he was waiving his right to appeal. [R. Rec. at 11:21 a.m.]. Sanchez-Beltran did not indicate that he now sought to appeal. Further, Sanchez-Beltran has not set forth any facts to indicate that following sentencing he asked to appeal. In fact, the § 2255 petition makes it clear that the complained of advise was prior to sentencing.[5]

Under these circumstances, the Court finds that Sanchez-Beltran's counsel was not deficient in his performance even if he failed to consult with Sanchez-Beltran. *Flores-Ortega*, 528 U.S. at 480 (noting that counsel may reasonably decide that he need not repeat a defendant's appeal rights where "a sentencing court's instructions to a defendant about his appeal rights in a

---

[4] Sanchez-Beltran's PSR indicates that his offense level was also decreased two levels because he qualified for a "safety valve" adjustment under U.S.S.G. § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases). [Presentence Investigation Report, at ¶ 16].

[5] "I was told . . . that if I [were] to appeal, I would face a harsher sentence therefore my right to appeal was waived." [Dkt. No. 1 at 5].

particular case are so clear and informative as to substitute for counsel's duty to consult"). For these reasons, the Court finds that Sanchez-Beltran's bare assertion that his counsel "failed to file an appeal" is insufficient to show that he received ineffective assistance of counsel.

### D. Constitutional Challenge to Sentence

Finally, Sanchez-Beltran asserts, in essence, that United States citizens and aliens live under the same rules, policies, privileges, and standards. [Dkt. No. at 6]. This claim, in which he is essentially arguing denial of equal protection and due process, is constitutional, and may be considered under 28 U.S.C. § 2255. However, his assertion—that a deportable alien serves his sentence under circumstances more severe than those facing citizens of the United States—actually concerns the execution of a sentence, not the sentence's validity, and is therefore only proper under 28 U.S.C. § 2241. *Carvajal v. Tombone*, 31 Fed. App'x 155, at *1 (5th Cir. 2001) (unpublished opinion) (citing *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992)). To construe such a claim as a § 2255 motion is reversible error. *See Carvajal*, 31 Fed. App'x 155, at *1. Motions under 28 U.S.C. § 2241 must normally be brought in the place of the petitioner's confinement, which in this case is the Eden Detention Center, located in Eden, Texas. Consequently, the Court appears to lack statutory jurisdiction to hear the claim.

Normally, the Court would transfer the case to the place of Sanchez-Beltran's confinement. *See* 28 U.S.C. § 1631. When a court lacks jurisdiction, § 1631 states that the court "shall, if it is in the interest of justice, transfer such action" to the proper court. However, the Fifth Circuit has indicated that it defeats the interest of justice to transfer a meritless claim that will consume judicial time and energy. *Chandler v. Commander, Army Fin. & Accounting Cir.*, 863 F.2d 13, 15 (5th Cir. 1989); *see also Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (holding that "a court is authorized to consider the consequences of a transfer by taking 'a peek

at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed") (citation omitted); *Wigglesworth v. I.N.S.*, 319 F.3d 951, 959 (7th Cir. 2003) (reasoning that a court has implicit authority under § 1631 to "take a peek" at the merits when deciding whether to transfer or dismiss). The Court will therefore "take a peek" at the merits of Sanchez-Beltran's motion to determine whether transfer would serve the interest of justice.

Sanchez-Beltran's equal protection and due process claims lack merit. He has not alleged that denying deportable aliens program benefits available to other federal prisoners or a chance to participate in halfway house, early release, or drug programs lacks a rational basis. *Cf. Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (per curiam) (holding that flight risk of deportable aliens is a rational basis for ineligibility for community-based programs); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (applying "rational basis" review of equal protection claim to have right to early release). The Bureau of Prison's exclusion of INS detainees such as Sanchez-Beltran from halfway houses, early release, and drug programs is therefore constitutional. Moreover, there is no constitutional right to be released before the expiration of a valid sentence. *Wottlin*, 136 F.3d at 1037. Sanchez-Beltran's claim under 28 U.S.C. § 2241 lacks merit, and the Court will therefore dismiss, not transfer, this claim. *See* § 1631; *Chandler*, 863 F.2d at 15.

## IV. CONCLUSION

For the reasons stated herein, Sanchez-Beltran's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DISMISSED**. Should Sanchez-Beltran seek a certificate of appealability, such is **DENIED.**

IT IS SO ORDERED.

Done this 19th day of June, 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE